**WESTERN FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**ATKINSON FINANCIAL CORPORATION,**
Appellee.

No. 2–87–106–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 24, 1988.

Rehearing Denied April 6, 1988.

Butler & Binion, Michael S. Forshey, Houston, for appellant.

Pullman & Schendle, Richard D. Pullman, and W. Randolph Elliott, Dallas, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II, and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

Appellant Western Federal Savings and Loan Association, which was the plaintiff and counter-defendant below, was counter-sued by appellee Atkinson Financial Corporation, for a breach of contract regarding the purchase of a promissory note. The trial court entered a summary judgment for $5,348,849.19 together with interest, attorneys' fees and costs of court against appellant.

We affirm.

On April 29, 1985, Brett M. Davis and his wife executed a $22,500,000.00 promissory note (the WSA note) secured by 257.756 acres of land in Tarrant County, Texas and payable to Western Savings Association, appellant's predecessor in interest. The WSA note wrapped an $18,000,000.00 promissory note (the subject note) dated April 29, 1985, executed by Davis and payable to appellee (Atkinson Financial). The subject note wrapped a $7,586,235.00 promissory note executed by Watson and Taylor Realty Company payable to Futuro, Inc. and a $13,500,000.00 promissory note payable to Vernon Savings and Loan Association (the underlying note).

■ A "wrapped note" represents a total obligation which recognizes senior liens and includes the obligation to discharge the indebtedness secured by such senior liens out of the total obligation set forth in the "wrapped note" *but* without legally assuming the specific senior indebtedness. In other words, the new obligation is wrapped around the prior indebtedness, whether one or several, and the new indebtedness remains junior in priority to the existing lien or liens.

At the time of the execution of the WSA note and the subject note, Atkinson Financial executed an estoppel agreement with appellant (Western Federal) providing Western Federal with the right to purchase the subject note and lien securing it prior to Atkinson Financial taking any action with respect to the default thereon.

On June 2, 1986, Davis, the maker of the subject note, filed in a district court of Dallas County a suit against Atkinson Financial enjoining the foreclosure of the Tarrant County property by Atkinson Financial and asserting usury claims against Atkinson Financial. The usury claims and defenses against the subject note remained outstanding until the suit was dismissed with prejudice on October 24, 1986 in favor of Atkinson Financial.

On June 3, 1986, Western Federal filed "Plaintiff's Original Petition," cause number 141–96925–86, in the 141st Judicial District Court of Tarrant County, Texas (the Tarrant County suit), seeking to enjoin At-

kinson Financial from foreclosing on the Tarrant County property and the lien securing the subject note.

On June 9, 1986, Atkinson Financial filed "Defendant's Original Answer And Counterclaim" in the Tarrant County suit. In its answer, Atkinson Financial attempted to accept what it claims was an offer by Western Federal in its original petition to purchase the subject note pursuant to the terms of the estoppel, thereby creating a contract.

On December 5, 1986, Atkinson Financial filed a first amended original counterclaim and a motion for summary judgment. The trial court signed the summary judgment in favor of Atkinson Financial on February 20, 1987. It is from this ruling of the trial court that Western Federal appeals.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R. CIV.P. 166–A. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

In its first point of error, Western Federal generally contends the trial court erred in granting the summary judgment and

specifically sets forth eight bases for its contention.

■ Western Federal's argument that it is not a real party in interest has no substance. Plaintiff's original petition was filed by Western Savings Association against Atkinson Land Company, Inc., and defendant's original answer and counterclaim was filed by Atkinson Land Company, Inc. In a first amended original counterclaim, Atkinson Land Company restated its cause of action under its new and present name Atkinson Financial Corporation. Under its new name Atkinson Financial then filed its motion for summary judgment against Western Federal Savings and Loan Association alleging it to be the successor in interest to Western Savings Association. Five days later, on December 10, 1986, Western Federal caused an agreed order to be entered which stated that, "Western Federal Savings and Loan Association ("Western Federal") moved the Court to substitute Western Federal as the real party interest in place of Plaintiff/Counter Defendant Western Savings Association ("WSA") and to dismiss WSA from this action." By its own admissions Western Federal's motion established itself as the real party in interest with respect to the instant case.

Western Federal's first three arguments for attacking the summary judgment are directed at the lack of essential elements of a contract. Western Federal claims there are genuine issues of material facts as to whether: (1) there was a complete tender by Western Federal; (2) there was an offer by Western Federal; and (3) the offer, if one existed, was bilateral.

■ As previously stated, Western Federal and Atkinson Financial entered into an estoppel agreement at the time the WSA note and subject note were executed. The estoppel agreement in relevant part reads:

> 5. Western Savings Association shall have the right to purchase our said note and liens prior to our taking any action pursuant to default therein. The Undersigned will further sell and negotiate the note and liens to Western Savings Association at any time upon the request of

Western Savings Association for the remaining unpaid principal and interest thereon and costs secured thereby. This right is irrevocable and in the event of such purchase we or the holder thereof will properly endorse the note and transfer the lien to the reasonable satisfaction of Western Savings Association.

The estoppel agreement created an irrevocable right, in essence an option, in favor of Western Federal, optionee, to purchase the note and liens prior to any default action taken by Atkinson Financial. An option is a mere offer which binds the optionee to nothing and which he may or may not accept at his election. *Hankey v. Employer's Casualty Co.*, 176 S.W.2d 357, 362 (Tex.Civ.App.—Galveston 1943, no writ) (opinion on reh'g). Until so accepted by the optionee it is not a completed contract. *Id.* We believe Western Federal accepted the option to purchase the note and liens in its original petition.

■ In response to Atkinson Financial's attempt to foreclose on the subject note, Western Federal filed its original petition to persuade the court to enjoin the scheduled foreclosure. The petition reads in relevant part:

> Specifically, Plaintiff avers that it has and does hereby tender sufficient sums to pay off and purchase Defendant's Note as required under the the Estoppel Agreement.
>
> . . . .
>
> ... Plaintiff has performed all conditions precedent and is ready, willing, and able to perform each and every obligation imposed by the note and deed of trust and to perform such equitable acts as the Court deems necessary.

We construe Western Federal's statement that there was "no offer" to mean Western Federal never intended to exercise its option. However, Western Federal's argument must fail in light of the clear language of plaintiff's original petition. The language found in paragraph IV of plaintiff's original petition further supports the fact that Western Federal intended to exercise its option by stating, "ATKINSON

LAND COMPANY, INC., has failed to accept a payoff of its loan as required int [sic] the above referenced Estoppel agreement...."

■ It is immaterial that Western Federal's original petition did not include an actual tender of money. Unless the option contains provisions to the contrary, all that is required of the optionee is that he notify the optionor, prior to the expiration of the option, of his decision to exercise the option. *Odum v. Sims*, 609 S.W.2d 881, 882 (Tex.Civ.App.—San Antonio 1980, no writ); *San Antonio Joint Stock Land Bank v. Malcher*, 164 S.W.2d 197, 200 (Tex.Civ.App. —San Antonio 1942, writ ref'd w.o.m.). Optionee thereafter has a reasonable time within which to complete the deal. *Id.*

■ Western Federal's allegation that its acceptance of the option is unilateral in nature is incorrect. It is true that until the option is exercised in accordance with the contract, the contract is said to be unilateral in nature. *Tye v. Apperson*, 689 S.W.2d 320, 323 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). But when the option is exercised in accordance with the terms of the contract, such as the one here, it becomes a binding bilateral contract. *See id.*

■ Western Federal next contends an enforceable contract does not exist since Atkinson Financial would have been unable to comply with the terms of the estoppel agreement because from June 2, 1986 through October 24, 1986, the subject note was subject to a usury claim and defenses asserted by the maker, Davis, in a suit to enjoin foreclosure by Atkinson Financial. As a result of Davis' suit, Western Federal contends that any attempt by Atkinson Financial to endorse the subject note and lien to the order of Western Federal would have been a breach of its implied warranty that no defense of any party is good against it. *See* TEX.BUS. & COM.CODE ANN. sec. 3.417(b)(4) (Tex.UCC) (Vernon 1968). We disagree.

Western Federal cites *Bradley v. Apel*, 531 S.W.2d 678, 682–83 (Tex.Civ.App.— Fort Worth 1975, writ ref'd n.r.e.) to support its contention that Atkinson Financial

is not entitled to sue for breach of a contract under which it was unable to comply. A review of the facts of *Bradley* makes it distinguishable from the instant case. In *Bradley*, Apel did not have a merchantable title to certain real estate but held a contractual right to acquire title from the holder of the legal title by June 13, 1974. *Id.* at 680. Meanwhile, Apel entered a contract with Bradley for the purchase of the land which never was consummated by the June 13, 1974 date. *Id.* at 682. This court held that Apel did not have a cause of action for a breach of contract occurring after June 14, 1974 because he did not have the rights to acquire title to convey to Bradley. *Id.*

■ In contrast, in the present case Atkinson Financial is the holder of a promissory note and a lien securing the same. *See* TEX.BUS. & COM.CODE ANN. sec. 3.302 (Tex.UCC) (Vernon 1968). A holder of an instrument has the right to transfer or negotiate it, or enforce its payment. *See* TEX.BUS. & COM.CODE ANN. sec. 3.301 (Tex.UCC) (Vernon 1968). A holder of a promissory note has the rights to enforce an agreement concerning the note and the same cannot be properly analogized to the rights, or lack of rights, of a person who holds no title or interest in a piece of real estate.

Furthermore, until Davis' suit became a final judgment there is no showing that the usury claim was a valid defense. TEX. BUS. & COM.CODE ANN. sec. 3.417(b)(4) provides that endorsement implies a warranty that no defense of any party is *good* against the endorser, not that no party has asserted any claim with respect to the note.

By December 2, 1986, Western Federal had not consummated the purchase of the subject note so Atkinson Financial acquired the property securing the note through foreclosure proceedings. On December 5, 1986, Atkinson Financial filed its motion for summary judgment to recover the damages that it had sustained as a result of Western Federal's failure to consummate the purchase.

■ The estoppel agreement did not specify a time period in which the purchase

of the note would have to be completed once the optionee notified the optionor of his intention to exercise the option. Western Federal, therefore, had a reasonable time within which to complete the deal. *See San Antonio Joint Stock Land Bank,* 164 S.W.2d at 200.

Atkinson Financial waited for what it construed to be a "reasonable time" to consummate the transaction, and then asserted a breach had occurred by filing its December 5, 1986 motion for summary judgment. Even assuming, *arguendo,* that Atkinson Financial could comply with the contract prior to October 24, 1986, Atkinson Financial waited a considerable period after such date to foreclose on the Tarrant County property and assert its contractual right against Western Federal.

▪ Western Federal's fifth basis for challenging the trial court's summary judgment is that Atkinson Financial made a conditional acceptance, which amounted to a rejection, of Western Federal's alleged offer to exercise its option. In response to Western Federal's original petition, Atkinson Financial filed an original answer and counterclaim in which Atkinson Financial stated, "[s]aid purchase should be completed at the earliest reasonable opportunity, and in any event prior to the next scheduled foreclosure date, namely July 1, 1986.-" These words did not materially change the terms of Western Federal's offer to exercise its option. *See United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 363–64 (Tex.1968). As previously discussed, unless otherwise stated a "reasonable time" is allowed to complete a transaction in accordance with the terms of an option agreement. *San Antonio Joint Stock Land Bank,* 164 S.W.2d at 200.

▪ Western Federal's argument that there exists some ambiguity with respect to what was offered and accepted must also fail. Western Federal's original petition was worded "it *has* and does hereby tender...." [Emphasis added.] Atkinson Financial's original answer and counterclaim denies Western Federal made any offer of tender of payment prior to those contained in Western Federal's original petition. Western Federal attempts to create an ambiguity by offering the affidavit of Hightower, the attorney for it in connection with the filing of plaintiff's original petition. Hightower stated he, prior to filing the petition, offered Atkinson Financial $4,500,000.00, representing the difference between the principal amount of the subject note and the underlying note, as a sufficient sum to pay off the subject note. He further contends by filing "Plaintiff's Original Petition," Western Federal never "intended to pay the $18,000,000.00 principal amount of the note but rather pay the $4,500,000.00 which was Atkinson Land Company, Inc.'s interest in the Note above and beyond the underlying obligations."

Western Federal's original petition stated it would tender sufficient sums to pay off and purchase the note "as required under the Estoppel Agreement." In turn, paragraph five of the estoppel agreement provides that upon Western Federal's request it could purchase the note and liens for the "remaining unpaid principal and interest thereon and costs secured thereby." Western Federal, therefore, made an offer to purchase the subject note pursuant to the unambiguous terms of the estoppel agreement. If a contract on its face is capable of being given a definite legal meaning, parol evidence is not competent to render it ambiguous. *Barr v. Southwest Wholesale Furniture & App. Co.,* 331 S.W.2d 343, 344 (Tex.Civ.App.—Fort Worth 1960, no writ). Hence, any claims of a prior tender becomes immaterial because Western Federal is bound by the clear and unambiguous language of its offer contained in its original petition, and parol evidence may not be relied upon to attach a private meaning to the words therein.

▪ Last, Western Federal contends there was no competent summary judgment proof of the amount of damages sustained by Atkinson Financial as a result of Western Federal's refusal to purchase the subject note. At this point, we will also address Western Federal's point of error three which challenges the admissibility of exhibit "5," certain calculations of the amount required on December 2, 1986 to

purchase the subject note. Western Federal complains that exhibit "5" is unsworn, conclusory and hearsay.

The estoppel agreement sets forth the basic formula for the amount required to purchase the subject note as of December 2, 1986, the date on which Atkinson Financial mitigated its damage by foreclosing on the property securing the subject note: "the remaining unpaid principal and interest thereon and costs secured thereby." Once this sum is determined, the only remaining element necessary to compute damages is the amount received by Atkinson Financial upon foreclosure of the property, the difference between the sums being the amount of Atkinson Financial's damages.

The subject note, entered into evidence, provides that interest at the rate of 12% will be paid each year in advance, noting that the first year's payment was made when the subject note was executed. Thus, the next annual payment of interest at the rate of 12% would be due on April 24, 1986. Mr. Atkinson's affidavit states that on or about April 29, 1985, Davis prepaid interest for a period ending on April 24, 1986, but that no other payments had been made on the subject note. As a result, a default existed under the terms of the note.

The subject note provides in paragraph two that interest on past-due principal and, to the extent permitted by law, on past-due interest, shall accrue at the highest rate permitted by applicable law. The terms of the note allowed for a ten-day grace period. The highest applicable rate during the default period was 18%. The elements of notice to Davis of default and acceleration of the subject note is supplied by the April 24, 1986 letter sent by Atkinson Financial's attorney to Davis and entered as summary judgment proof thereof. From this summary judgment proof, it was possible for the trial judge to calculate the interest due on the principal and the interest due on the interest during the default period.

The next figure needed is the amount of reimbursement for the unearned interest prepaid on the underlying note. The underlying note, entered into evidence without objection, had a principal amount of $7,586,235.00 and provides that the interest rate is 11⅞ per annum.

The last remaining item due under the terms of the estoppel agreement and supplied by Mr. Atkinson's affidavit, namely the costs secured by the note, was the legal fees for collection and litigation activities in this cause of action. However, when the trial court overruled Western Federal's motion for new trial, he conditioned it upon Atkinson Financial filing a remittitur in the amount of $100,000.00 because the record failed to reflect any competent summary judgment evidence as to attorneys' fees. The remittitur was filed the same day, so Western Federal's challenge as to damages on appeal will not involve attorneys' fees.

As for the amount received by Atkinson Financial upon foreclosure of the property, Mr. Atkinson's affidavit states Atkinson Financial received $15,251,609.19 at the foreclosure of the property which served as security for the note, and this amount was credited against the note.

We note that the method by which the amount to purchase the subject note was calculated, although the figures were different due to the earlier date, were initially brought to Western Federal's attention in Atkinson Financial's October 17, 1986 letter, exhibit "B," requesting Western Federal to consummate the transaction at issue.

■ We conclude that the subject note, the underlying note and the affidavit of Mr. Atkinson supplied the trial judge with all the information needed to determine damages. Exhibit "5" merely reduced all the summary judgment evidence from words into a numerical computation which arrived at the amount required to purchase the note. Even assuming exhibit "5" was inadmissible, the trial court already had all the necessary information before it to make its own determination of damage. Although we find the trial court's computations correct, this court based on the same evidence could have made any necessary corrections in the trial court's calculation. TEX.R.APP.P. 80(b). Western Federal's points of error one and three are overruled.

Western Federal's points of error two and four attack two evidentiary rulings of the trial court: (1) the admittance into evidence of a letter containing Atkinson Financial's alleged acceptance, exhibit "A;" and (2) the admittance into evidence of a prior pleading, exhibit "6."

 Western Federal argues that the letter was hearsay with no proper predicate but fails to explain the nature of the alleged hearsay or lack of predicate. Exhibit "A" is a letter from Atkinson Financial's attorney to Western Federal's attorney accepting Western Federal's offer contained in its original petition. Atkinson Financial's attorney acknowledged in his affidavit, exhibit "3," that:

> By letter dated June 6, 1986, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference, and in my capacity as attorney for Atkinson Land Company, Inc., I advised the counsel for Western Savings Association that its offer to purchase from Atkinson Land Company, Inc. a certain $18,000,000.00 All–Inclusive Promissory Note was accepted by Atkinson Land Company, Inc.

TEX.R.CIV.EVID. 901(b)(1) expressly allows testimony of a witness with knowledge that a document is what it is claimed to be as a means of sufficient authentication of that document. The affidavit of the author of the letter is sufficient to establish its admissibility into evidence. *See Borak v. Bridge*, 524 S.W.2d 773, 777 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). As for the hearsay allegation, the offer and acceptance forming a contract are operative facts, admitted into evidence not to prove their truth but to prove their utterance. *Yellow Freight System v. North Am. Cabinet*, 670 S.W.2d 387, 390 (Tex.App.—Texarkana 1984, no writ). However, even if the letter was hearsay, the unobjected-to affidavit of Atkinson Financial's attorney reiterates the content of the letter, thereby rendering the admission of the letter harmless. *See Contact Products, Inc. v. Dixico Inc.*, 672 S.W.2d 607, 609 (Tex.App.—Dallas 1984, no writ).

 Western Federal next objects to the admission of the prior pleadings on the grounds that it is an uncertified copy of a pleading in a prior proceeding which is not sworn to be a true and correct copy. In a separate action, independent of the present cause of action, entitled *Western Federal Savings and Loan Association v. James M. Schendle, Trustee and Atkinson Land Company, Inc.*, Western Federal filed a pleading stating, "Western Federal is the successor in interest to the rights of Western Savings Association with regard to the Western Savings Liens." While the pleading was offered to provide additional assurance that Western Federal was a proper party in interest in the case at hand, the pleading was not essential to the establishment of that fact. As indicated by our holding in Western Federal's point of error one, we view Western Federal's self-initiated motion to substitute parties as ample evidence of it being a proper party. Therefore, the trial court's error in admitting the uncertified and unverified prior pleading is a harmless error. Western Federal's points of error two and four are overruled.

The trial court's entry of a summary judgment in favor of Atkinson Financial is affirmed. All costs are assessed against Western Federal.