**Charles SANDEL, Appellant**

v.

**ATP OIL & GAS CORPORATION, Appellee.**

No. 14–06–00323–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 30, 2007.

---

Ross Spence, Mark Cory Schuck, Houston, for appellant.

Benjamin A. Escobar, Jr., Houston, for appellee.

Panel consists of Justices YATES, SEYMORE, and EDELMAN.*

## OPINION

LESLIE B. YATES, Justice.

Appellant Charles Sandel appeals from the trial court's grant of summary judgment in favor of appellee ATP Oil & Gas Corporation ("ATP"). We affirm.

## BACKGROUND

ATP, an oil and gas production company, hired Sandel on April 26, 1999 as its Director of Land and Associate Counsel. Pursuant to its stock option plans, ATP periodically offered its employees stock options. During his employment, ATP offered Sandel three grants of stock options. In 1999 and 2000, ATP granted Sandel stock options, and he signed a "Nonqualified Stock Option Agreement" as required by ATP in conjunction with the grant. Sandel signed no such stock option agreement for the final of the three stock option

---

* Senior Justice Richard H. Edelman sitting by assignment.

grants in 2001, and it is the third offer that is the focus of this litigation.

On May 17, 2001, ATP sent Sandel a letter, which was signed by T. Paul Bulmahn, ATP's president. This letter discussed changes to Sandel's base salary and vacation benefits. As to stock options, the letter stated as follows:

> Further, ATP is pleased to grant you options for stock ownership of the company in the amount of 20,000 shares at the market value as of closing of the market exchange on May 17, 2001. One-quarter of these options will be exercisable on July 1, 2002, and one-quarter each succeeding year on that date.

The letter concluded, "Your dedication and hard work is recognized and valued." Unlike in 1999 and 2000, this letter was not accompanied by a stock option agreement for Sandel's signature, which surprised Sandel. Rather, sometime later (the record does not reveal exactly when), Bulmahn provided Sandel with a stock option agreement and asked him to sign it. Sandel refused, stating that he wanted to read it. He later told Bulmahn's assistant that he had "concerns" about the agreement.

In June of 2003, Sandel resigned his position at ATP without ever having signed the stock option agreement. Over a year later, in September 2004, Sandel wrote Bulmahn a letter requesting details about how to exercise the stock options discussed in the May 2001 letter. ATP responded by letter, informing him that he had no options to exercise because, according to the stock option agreement, he was entitled to exercise vested options only during the six months following the end of his employment. More letters were exchanged, with Sandel taking the position that the May 2001 letter constituted an unconditional grant of stock options and ATP insisting that the letter merely notified Sandel of the grant and that exercise of the stock options was governed by the stock option agreement and the company's stock option plan.

In December 2004, ATP filed a declaratory judgment action, seeking a declaration that the May 2001 letter was not an enforceable grant of stock options. The trial court granted ATP's motion for summary judgment, specifically finding that the May 2001 letter did not constitute a binding agreement. Sandel now appeals, arguing in one issue that the trial court erred in granting summary judgment because the May 2001 letter is binding, both under the common law and Texas statutory law, and asserting that ATP is estopped from denying that the letter is binding.

## ANALYSIS

Appellee's motion for summary judgment contained both traditional and no-evidence grounds. *See* TEX.R. CIV. P. 166a(c), (i). The standard of review for a traditional motion for summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under this traditional standard, this court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor. *See id.* We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v.*

*Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 284 (Tex.App.Houston [14th Dist.] 2000, no pet.).

In *1464–Eight, Ltd. v. Joppich,* 154 S.W.3d 101, 110 (Tex.2004), the Texas Supreme Court adopted section 87 of the Restatement (Second) of Contracts regarding option contracts. Section 87 provides, in pertinent part:

(1) An offer is binding as an option contract if it

(a) is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time; or

(b) is made irrevocable by statute.

RESTATEMENT (SECOND) OF CONTRACTS § 87(1) (1981); *see also Joppich,* 154 S.W.3d at 110. Thus, an offer is irrevocable if it either meets the elements in section 87(1)(a) or meets the requirements of a relevant statute. Sandel argues that the May 2001 letter irrevocably grants him stock options under both theories.

■■■ We conclude the May 2001 letter is not irrevocable under section 87(1)(a) of the Restatement. Section 87(1)(a) requires that an offer be in writing and "recite[ ] a purported consideration for the making of the offer." Consideration is a bargained for exchange consisting of a benefit to the promisor or a detriment to the promisee. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991). The parties have not cited, and we cannot

find, any cases from Texas or other states defining how consideration must be "recite[d]" under section 87. The plain meaning of recite is "[t]o relate in detail" or "[t]o list or enumerate." American Heritage Dictionary (4th ed.2006); *see also* BLACK'S LAW DICTIONARY 1298 (8th ed.2004) (stating that a "recital" is "[a]n act or description of some fact or thing"). Thus, the bargained for exchange must be detailed or enumerated in the offer. The May 2001 letter does not detail or enumerate any consideration for granting stock options. As Sandel testified in his deposition, he considered the letter as being given with "no strings attached," and he specifically indicated that no one asked him to give up any rights to receive the letter. Apparently recognizing that his past service cannot constitute consideration,[1] Sandel argues on appeal that the final statement in the May 2001 letter, "Your dedication and hard work is recognized and valued," implies an expectation of continued hard work, but that argument is inconsistent with his deposition testimony that the letter came with no strings attached. Further, any such implied consideration is not recited in the letter and is thus insufficient under section 87(1)(a). Sandel also argues that he continued working for ATP for two years after receiving the May 2001 letter and that his actual continued employment constitutes consideration. However, as discussed above, that continued employment was not bargained for, and "[t]he detriment [to the promisee] must induce the making of the promise." *Roark,* 813 S.W.2d at 496. For these reasons, we conclude the trial court did not err in granting summary judgment on the ground that the May 2001 letter is not binding under section 87(1)(a).

■■■ We now consider whether the May 2001 letter is binding under section 87(2)

---

1. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 659 (Tex.2006) (Jefferson, C.J., concurring) (noting that " 'past consideration' is not consideration").

pursuant to a statute. Article 2.14–1 of the Texas Business Corporations Act governs the grant of stock options. It provides that a corporation may create stock options and that such options "shall be evidenced in such manner as the board of directors shall approve." TEX. BUS. CORP. ACT ANN. art. 2.14–1, §§ A, C (Vernon Supp.2006). ATP's board of directors, in its stock option plan, set forth the manner in which stock options can be granted and exercised. The stock option plan provided:

> Each Option shall be evidenced by an Option Agreement in such form and containing such provisions not inconsistent with the provisions of the Plan as the Committee from time to time shall approve.... Each Option Agreement shall specify the effect of termination of ... employment....

We conclude that the May 2001 letter does not evidence the grant of stock options as required by ATP's board of directors. The stock option plan requires that all options be evidenced by a stock option agreement that specifies the effect of termination of employment. Although the stock option agreement Sandel refused to sign specified that such options expired six months after termination, the May 2001 letter was silent on the subject and thus could not constitute a stock option agreement under the stock option plan. Sandel argues that the stock option plan and stock agreement are irrelevant because ATP's board of directors designated Bulmahn as the person to grant stock options and Bulmahn's May 2001 letter did not impose any conditions on the grant. However, even if the board of directors designated Bulmahn to grant stock options, there is no evidence that he was authorized to do so in a manner inconsistent with the stock option plan. Thus, although there are no Texas cases interpreting article 2.14–1 in the context of stock options, we conclude that under the plain meaning of the statute, the May 2001 letter was not irrevocable under the statute because the letter did not grant options in the manner required by the stock option plan, and therefore the trial court did not err in granting summary judgment on this basis.

■ Finally, Sandel argues that ATP is estopped from contending that the May 2001 letter is not binding under the doctrine of promissory estoppel. Promissory estoppel is a defensive theory that estops a promisor from denying the enforceability of a promise. *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997). The elements of promissory estoppel are a promise that the promisor can foresee will cause substantial, detrimental reliance by the promisee. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.); *see also English*, 660 S.W.2d at 524 (finding no promissory estoppel when plaintiff could not show that he would not have taken his detrimental actions if defendant had not made promise). Sandel contends that the May 2001 letter constitutes a promise that he detrimentally relied upon by continuing to work at ATP for two years after receiving it. He argues that this either establishes his promissory estoppel defense as a matter of law or at least raises a fact issue precluding summary judgment. We disagree. Assuming the May 2001 letter constitutes a promise, Sandel has offered no evidence of detrimental reliance. Sandel claims his testimony that he did not seek other employment for two years shows detrimental reliance. However, when Sandel received the May 2001 letter, he had no employment offers or pending interviews and had not identified any potential employers. Failure to seek another job is insufficient because Sandel must show that but for the

letter, he would have stopped working for ATP, and he presented no such evidence. *See English,* 660 S.W.2d at 524; *Miller,* 229 S.W.3d at 379; *see also First Nat'l Bankshares of Beloit, Inc. v. Geisel,* 853 F.Supp. 1344, 1356 (D.Kan.1994) (concluding that evidence that plaintiffs relied on promise of stock options in declining to pursue other employment opportunities was insufficient to raise fact issue on detrimental reliance element of promissory estoppel defense); *cf. Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 930 (Tex.1996) (holding that employer's promise to recall laid off employee could not support fraud claim because employee did not present any evidence of detrimental reliance "such as turning down other offers of employment"); *Miller,* 229 S.W.3d at 379 (finding no promissory estoppel when employee accepted new job based on employer's promise when former position was no longer available). Thus, we conclude the trial court did not err in granting summary judgment on Sandel's promissory estoppel defense.

We affirm the trial court's judgment.