Motion for Rehearing Overruled; Reversed and Remanded; Opinion of March
25, 2010 Withdrawn; and Substitute Opinion filed April 29, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00951-CV

___________________

 

M7 Capital LLC, Appellant

 

V.

 

Theodore B. Miller, Jr. a/k/a Ted B. Miller,
Jr., Appellee



 



 

On
Appeal from the 11th District Court

Harris County,
Texas



Trial Court Cause No. 2007-40794

 



 

 

SUBSTITUTE OPINION

            We
overrule appellee’s motion for rehearing, withdraw our opinion of March 25,
2010, and substitute this opinion in its place.

            This is an
appeal of a summary judgment granted in the defendant’s favor on the claimed
breach of an option contract.  On appeal, the plaintiff argues that (a) the
absence of a signed writing setting forth the agreement’s terms does not bar
enforcement of an option contract to purchase an interest in a limited
partnership, and (b) there is evidence raising a genuine issue of material fact
on each of the challenged elements of plaintiff’s claim.  Because we agree with
both points, we reverse the judgment and remand the case to the trial court.

I.  Factual and Procedural
Background[1]

            In November 2002, John P. Miller (“John”)
and Ted Miller (“Ted”) began to discuss forming a limited partnership to
purchase the assets of Fairchild Aircraft out of bankruptcy.  Ted bid on some
assets from a San Antonio bankruptcy in December and on some assets from a Virginia
bankruptcy in February 2003.  Closing on both purchases was set for April 1,
2003.  John and Ted agreed that an entity controlled by Ted would own at least
a 51%-interest in the limited partnership they planned to form (the “Partnership”).
 John or an entity he controlled would have an option to purchase up to 49% of
the Partnership by paying (a) an amount equal to 49% of the equity Ted
invested, and (b) 20% compound interest on the amount Ted invested, with
such interest accruing only until John’s company bought a share in the
Partnership.  As consideration for the option contract, John agreed to give Ted
3% of Lifebridge, an entity controlled by John’s family.  Ted and John orally
agreed that John’s company would have to purchase its interest in the
Partnership within ninety days after Ted’s company closed on the assets.  

            In March 2003, Ted formed the Limited
Partnership (M7 Holdings, LP), invested $3.4 million in it, and obtained
financing for the remaining $10 million required to purchase the assets.  Ted
sent John the Limited Partnership Agreement for M7 Holdings, LP at that time. 
John formed appellant M7 Capital LLC (“M7”) to purchase an interest in the Partnership,
and he and Ted agreed that the percentage that M7 would be permitted to
purchase in the Partnership would decrease over time.  On March 26, 2003, John
sent an email to Ted summarizing their agreement as follows: 

[M7] has an option to make the investment of 49% of the
equity required at closing.  If not, the option to buy equity reduces to 44%
for the first 30 days following closing, then 39% for the second 30 days
following closing, then 34% for the next 30 days, at which time [M7] will have no
option to buy stock. . . .

The Partnership closed
on the assets of the bankrupt companies on April 1, 2003.  Thus, M7 could have
purchased 49% on April 1, 44% on May 1, 39% on May 31, and 34% on June 30,
2003. 

            On June 4,
2003, John, acting as CEO and Managing Principal for M7, sent Ted an email
entitled “Decision concerning [partnership] purchase,” in which John stated as
follows:

[M7] will move forward with its purchase of 34% of [the
partnership]. . . .  I will yield to your decision as to when Taylor [Cooksey,
Ted’s attorney] should become involved.  I have attached the ownership
structure if you wish to provide this to Taylor, which includes the purchase
price plus accrual of bridge loan fees to you until closing. . . . 
I will continue to follow your lead as to my role in the building of the
company.

Attached to the email is a document entitled
“Purchase Price and Fees Until Closing,” in which John lists the “Purchase
Price for 34% ownership” of the Partnership as $1,184,582 and states that bridge
loan fees until June 1, 2003 are $39,486, with an additional fee of $649 per
diem until closing. 

            On June 27, 2003, Taylor Cooksey sent a memorandum
(the “Memorandum”) to Ted and two nonparties regarding M7’s proposed acquisition
of an interest in the Partnership.  In the Memorandum, a copy of which was sent
to M7, Cooksey wrote as follows:

We may anticipate that the referenced investment, pursuant
to which [M7] may acquire up to[[2]] a
thirty-four percent (34%) interest in [the Partnership], will require
modification of the existing [partnership agreement] as generally outlined
below. . . .  Please note that the following is intended only for the
convenience of the parties and is not intended to be a definitive term sheet. 

1.         Our office must receive written confirmation of
the escrow deposit of [M7]’s funds by no later than 5:00 p.m. (CST) on Monday,
June 30, 2003.  Time is of the essence and failure to meet this deadline will
terminate any further discussions.  The amount of deposit should be $1,255,000 ($1,245,000
for the 34% interest, plus $10,000 toward Ted Miller’s attorneys[’] fees.) . .
. .

. . .

3.         The Agreement will be modified to include
Buy/Sell provisions triggered upon various events including . . . cessation of
employment by John Miller . . . .  Any purchase price arising under the
Buy/Sell provisions will be fair market value established via one or more
independent appraisers.

M7 did not deposit
$1,255,000 into escrow by 5:00 p.m. on June 30, 2003.  Instead, John H. Bryan
III, an investor in M7, transferred $750,000 to the escrow account on that date. 
M7 argues that this sum represents the purchase price for a 20.48% interest in
the partnership.  There is no evidence in the record explaining how M7 computed
that percentage. 

Nine days later, on July 9,
2003, Ted emailed John an amended Limited Partnership Agreement for M7 Holdings
LP, with a signature line for M7 as a Class B limited partner and with a
provision for transfer of “a ______ percent (___%) Class B Limited Partnership
interest to M7.”  Under this agreement, if John ceased to be both (a) a
direct or indirect owner of M7 and (b) an employee or consultant of the
Partnership, then the Partnership or its remaining partners had the right to
purchase all or part of M7’s interest in the Partnership for the lesser of the
dollar value reflected in M7’s capital account or half of its fair market
value.

            Ted filled
in the evidentiary gaps in his reply brief to his motion for summary judgment.  John
wired $10,000 to Ted on July 2, 2003 for the attorney fees.  John emailed Ted
on July 11, 2003 cancelling the transaction.  John stated in the email that M7
would not proceed with the purchase of the ownership interest from Ted and
requested return of the escrow money.  However, Ted did not request or receive
permission to supplement the summary judgment record; therefore this evidence cannot
be considered by this court on appeal.  See Tex. R. Civ. P. 166a(d) (a summary judgment movant relying on
previously unfiled discovery products must file the material or a notice
specifically referring to such material twenty-one days before the summary
judgment hearing).  Because there is no basis in the record from which to
conclude that the trial court granted leave for the late filing, we presume the
trial court did not consider this evidence.  Envtl. Procedures, Inc. v.
Guidry, 282 S.W.3d 602, 620 (Tex. App.—Houston [14th Dist.] 2009, pet.
denied).

            On July 5,
2007, M7 sued Ted Miller for over $13 million, alleging that Ted “made it
impossible for [M7] to perform on the agreement by purposefully including
provisions in the Amended Partnership Agreement that would allow [Ted] to
purchase [M7’s] interest in [the Partnership]” at half of fair market value if
John Miller—who had no employment contract with the Partnership—ceased to be
employed by it.  Ted filed a motion for traditional and no-evidence summary
judgment which the trial court granted, and this appeal ensued.

II.  Issues Presented

            In three
issues to be addressed in this appeal, M7 challenges the trial court’s grant of
summary judgment in Ted’s favor.[3] 
In its first issue, M7 contends the trial court erred in granting Ted’s
no-evidence summary judgment motion because M7 produced summary judgment
evidence that raised a genuine issue of material fact on each of the challenged
breach of contract elements.  In its second issue, M7 argues that the trial
court erred in granting no-evidence summary judgment based on Ted’s erroneous assertion
that an option contract is unenforceable unless it is in writing, signed by the
offeror, recites the consideration for the option, and proposes an exchange
within a reasonable time.  M7 argues in its third issue that the trial court
erred in granting the traditional summary judgment because the absence of a
signed option contract does not conclusively negate the existence of an
enforceable contract.

III.  Standard of Review

            We review
summary judgments de novo.  Ferguson v. Bldg. Materials Corp. of Am.,
295 S.W.3d 642, 644 (Tex. 2009) (per curiam).  When the trial court grants the
judgment without specifying the grounds, we affirm the judgment if any of the
grounds presented are meritorious.  See W. Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005).  We consider all grounds the appellant preserves
for review that are necessary for final disposition of the appeal.  See Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005).  Here, Ted
moved for summary judgment on both traditional and no-evidence grounds; thus,
we apply the standard of review appropriate for each type of summary judgment,
taking as true all evidence favorable to the nonmovant and indulging every
reasonable inference and resolving any doubts in the nonmovant’s favor.  See
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004). 

            In a
traditional motion for summary judgment, the movant has the burden of showing
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425
(Tex. 1997).  To be entitled to traditional summary judgment, a defendant must
conclusively negate at least one essential element of each of the plaintiff’s
causes of action or conclusively establish each element of an affirmative
defense.  Id.  Evidence is conclusive only if reasonable people could
not differ in their conclusions.  City of Keller v. Wilson, 168 S.W.3d
802, 816 (Tex. 2005).  Once the defendant establishes its right to summary
judgment as a matter of law, the burden shifts to the plaintiff to present
evidence raising a genuine issue of material fact.  Westland Oil Dev. Corp.
v. Gulf Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982).

            In a no-evidence
summary judgment, the movant represents that there is no evidence of one or
more essential elements of the claims for which the nonmovant bears the burden
of proof at trial.  Tex. R. Civ. P.
166a(i); Lowe’s Home Ctrs., Inc. v. GSW Mktg., Inc., 293 S.W.3d
283, 287 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  We sustain a no-evidence
summary judgment when (a) there is a complete absence of evidence of a vital
fact, (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact, (c) the evidence offered to
prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.  Lowe’s, 298
S.W.3d at 287–88 (citing Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997)).  “Evidence does not exceed a scintilla if it
is ‘so weak as to do no more than create a mere surmise or suspicion’” that the
challenged fact exists.  Akin, Gump, Strauss, Hauer & Feld, L.L.P. v.
Nat’l Dev. & Research Corp., 299 S.W.3d 106, 115 (Tex. 2009) (quoting Kroger
Tex. L.P. v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006)).

IV.  Analysis

            A successful
breach of contract claim requires proof of the following: (a) a valid contract,
(b) performance or tendered performance by the plaintiff, (c) breach of the
contract by the defendant, and (d) damages sustained by the plaintiff as a
result of that breach.  Grynberg v. Grey Wolf Drilling Co., L.P., 296
S.W.3d 132, 136 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  In his traditional
motion for summary judgment, Ted contends that he conclusively proved that the
contract was not valid because an option contract cannot be oral.  In his no-evidence
motion for summary judgment, Ted contends there is no evidence of any of these
four elements.  The arguments and evidence concerning each ground for summary
judgment are discussed below.

A.        Existence
of a Valid and Enforceable Contract

            According to
Ted, the Texas Supreme Court adopted section 87 of the Restatement (Second) of
Contracts in 1464-Eight, Ltd. v. Joppich, 154 S.W.3d 101 (Tex. 2004). 
To be enforceable pursuant to section 87(1)(a), an option contract must (1) be
in writing, (2) be signed by the offeror, (3) recite the
consideration for the offer, and (4) propose an exchange on fair terms
within a reasonable time.  See Restatement
(Second) of Contracts § 87(1)(a) (1981).  Ted argues that because
there is no evidence that an option contract satisfying these four “Restatement
elements” existed, there is no evidence of a valid, enforceable option
contract.  Relying on John’s testimony that no writings signed by Ted Miller
set forth the terms of the option contract, Ted moved for traditional summary
judgment on the same grounds.

            Both
arguments rest on a misinterpretation of Joppich and a successor
decision by this court.  In Joppich, the petitioners argued that “the
respondent’s offer to sell real property should be binding as an option
contract because the offer was in writing and signed by the respondent,
acknowledged the receipt of a nominal consideration of ten dollars, and
proposed an exchange on fair terms within a reasonable time.”  Joppich,
154 S.W.3d at 102.  These arguments were directed to the requirements listed in
section 87(1)(a) of the Restatement (Second) of Contracts.  Joppich responded that
the option contract was unenforceable because the petitioners never paid the nominal
consideration recited.  The Texas Supreme Court followed section 87(1)(a) of the
Restatement (Second) of Contracts only in agreeing that when an option contract
contains a recital that some nominal sum constitutes consideration for the
option, the contract is enforceable despite the failure to pay the sum
recited.  Id. at 108–110.

            Ted further
argues that, according to this court, the Texas Supreme Court adopted the
elements of section 87 of the Restatement as mandatory requirements for
creating an enforceable option contract.  See Sandel v. ATP Oil &
Gas Corp., 243 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  In Sandel we stated that “the Texas Supreme Court adopted
section 87 of the Restatement (Second) of Contracts regarding option contracts”
in Joppich.  Id. at 752.  But that statement must be read in
context.  The Texas Supreme Court merely “incorporated” the language from section
87(1)(a) that describes the recital of consideration, rather than the payment
of consideration, as an element in an enforceable option contract.  See
Joppich, 154 S.W.3d at 102, 108–10.  And in Sandel, we did not read Joppich
to stand for the proposition that an option contract is unenforceable if it
does not comply with the Restatement elements.  This is readily seen by
comparing the two cases.  In Joppich, it was undisputed that the nominal
consideration recited—as stated in section 87 of the Restatement—was not paid; in
Sandel, the parties disputed whether consideration was recited or
paid—a factor not mentioned in the Restatement.  Thus, after determining
that the purported option contract did not recite consideration, we addressed
the question of whether consideration had been paid.  Sandel, 243 S.W.3d
at 752 (evaluating appellant’s claim that his continued employment was
consideration for an option).  This step would have been unnecessary if, as Ted
contends, an option contract is enforceable only if the contract complies with
the elements listed in the Restatement.  

            Ted has made
no other argument, either at trial or on appeal, in support of his position
that an oral option contract is unenforceable, and we have found no case in
which an option contract that was not subject to the statute of frauds was held
unenforceable simply because it was not in writing.  Cf. Miga v. Jensen,
96 S.W.3d 207, 209, 213 (Tex. 2002) (addressing the correct measure of damages
for breach of an oral option contract for the purchase of stock).  Because M7
offered more than a scintilla of evidence that a valid and enforceable contract
existed, and no applicable precedent supports Ted’s argument that an oral
option contract necessarily is unenforceable as a matter of law, summary
judgment cannot be affirmed on this basis. 

            Ted also
argues in his reply brief that no consideration actually was paid for the
option.  But the oral agreement included the promise to pay the 3% interest in
Lifebridge, which would happen at closing.  The contract was allegedly breached
before the final closing took place.  In addition, the lack of payment of the
consideration merely meant that Ted could revoke the option.  Culbertson v.
Brodsky, 788 S.W.2d 156, 157 (Tex. App.—Fort Worth 1990, writ denied).  Ted
does not argue that he revoked the option before acceptance.  Absent such a
contention, a promise to pay consideration is all that is necessary for a valid
option.  See Joppich, 154 S.W.3d at 105.

B.        Evidence
that M7 Performed or Tendered Performance

            Ted also moved for summary judgment on
the grounds that there is no evidence that M7 performed or tendered performance.
 To prove that it performed or tendered performance of its own contractual
obligations, a plaintiff must demonstrate that it complied with the contract’s
provisions.  Preston State Bank v. Jordan, 692 S.W.2d 740, 744 (Tex.
App.—Fort Worth 1985, no writ).  In the absence of equitable considerations not
presented here, an option contract may be exercised only in strict compliance
with the contract’s terms.  Zeidman v. Davis, 161 Tex. 496, 499, 342
S.W.2d 555, 558 (1961); Jones v. Gibbs, 133 Tex. 627, 639, 130 S.W.2d
265, 271 (1939).  “Acceptance of an option must be unqualified, unambiguous,
and strictly in accordance with the terms of the agreement.”  Comeaux v.
Suderman, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.)
(citing Crown Constr. Co. v. Huddleston, 961 S.W.2d 552, 558 (Tex. App.—San
Antonio 1997, no pet.)).  A failure to exercise an option according to its
terms, including a defective performance, legally amounts to a rejection.  Id.


            But not all
option contracts contain detailed specifications as to how the option must be
exercised.  “Unless the option contains provisions to the contrary, all that is
required of the optionee is that he notify the optionor, prior to the
expiration of the option, of his decision to exercise the option.”  W. Fed.
Sav. & Loan Ass’n v. Atkinson Fin. Corp., 747 S.W.2d 456, 461 (Tex.
App.—Fort Worth 1988, no writ).  The “‘[o]ptionee thereafter has a reasonable
time within which to complete the deal.’”  Luccia v. Ross, 274 S.W.3d
140, 148 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting W. Fed.
Sav. & Loan Ass’n, 747 S.W.2d at 461).  

            It is not
clear whether M7 argued that it exercised its option by performance or by
notification of its acceptance of the option.  Because the evidence raises a
fact issue under either approach, we conclude that summary judgment was not
warranted.

            1.         Exercise
by Performance

            Ted argues
that the option could be exercised only by strict compliance with the terms in
the Memorandum.  On appeal, M7 argues that the Memorandum contained terms to
which it did not agree.  Ted argues that M7’s position is inconsistent because
M7 alleged in its pleadings and in its summary judgment response that the
Memorandum “evidenced” the parties’ agreement.  A memorandum from Ted’s agent
to M7 containing instructions for exercising the option is evidence that an
option agreement existed.[4]
 This does not foreclose M7’s arguments about performance. 

In any
event, M7 produced more than a scintilla of evidence that it acted in
accordance with the “closing instructions” in the Memorandum, which allowed it
to purchase “up to” a 34%-interest in the Partnership.  M7 contends that its
deposit of $750,000 by the deadline in the Memorandum was for a purchase of
20.48% interest in the Partnership.  The Memorandum, by its terms, allowed for
a purchase of less than 34% when it used the words “up to” a 34% interest.  The
money could have included a deposit for the attorney fees as well.  This is
more than a scintilla of evidence of strict compliance with the terms of the
Memorandum.  This evidence raises a fact issue as to whether M7 strictly
complied with the terms of the Memoradum (if a jury agrees that the Memorandum
was the exclusive way for M7 to perform). 

            2.         Exercise
by Notification and Performance in a Reasonable Time

            According to
M7, the parties’ oral agreement did not specify how M7 was to exercise the
option.  M7 notified Ted on June 4, 2003 that it was purchasing a 34%-interest
in the Partnership for $1,184,582, plus loan fees in the amount of $39,486,
together with additional fees of $649 per day from June 1, 2003 until closing. 
M7 then performed by depositing $750,000 by the June 30 deadline, with closing
to follow.  M7 did not explain why it did not place a deposit for the entire
amount or whether it planned to do so by closing, but M7 nonetheless produced
more than a scintilla of evidence that it notified Ted of its intent to
exercise the option and produced more than a scintilla of evidence of actual
performance by depositing money in the escrow account.  The parties anticipated
a formal closing to follow, and the law allows an optionee a reasonable time to
complete the deal.  See Luccia, 274 S.W. 3d at 148.  Thus, a fact
issue exists as to whether M7 exercised the option and performed in a
reasonable time.

In its
appellate brief, M7 contends for the first time that there are questions of
fact as to whether Ted waived any deficiencies in M7’s acceptance of the option
offer or whether the time for M7 to perform its obligations under the option
contract was extended.  Because these arguments were not presented to the trial
court, we do not consider them on appeal.  See Tex. R. App. P. 33.1(a); Tex.
R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979). 

C.        Evidence of
Breach and Damages

            M7 contends
that Ted breached the contract by presenting M7 with partnership documents with
material changes.  M7 presented evidence showing the changes in the partnership
documents and an affidavit explaining why those terms were unacceptable.  M7
also supplied an affidavit supporting its damages. 

V.  Conclusion

            We reject
Ted’s argument that there cannot be an oral option contract.  M7 presented more
than a scintilla of evidence of the existence of a valid and enforceable
contract, performance, breach, and damages; in so doing, M7 raised fact issues
that foreclose summary judgment.  Accordingly, we reverse the judgment and
remand the case to the trial court.

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

Panel consists of Justices Anderson, Boyce, and Christopher.[5]

 









[1] In accordance with the
standard of review, we describe the summary judgment evidence in the light most
favorable to the nonmovant.





[2] Emphasis added.





[3] M7 originally presented
five issues on appeal, but Ted Miller concedes that the arguments M7 presents
regarding two of those issues are correct.  Specifically, Ted’s summary judgment
motion was based in part on M7’s deemed admissions, but after the motion was
filed, M7 was permitted to withdraw them.  M7 argues—and Ted agrees—that
summary judgment cannot be affirmed on the basis of the withdrawn admissions. 
We therefore sustain M7’s fourth and fifth issues without further discussion.





[4] In light of such a
closing memorandum it is hard to understand how Ted could argue that there was
“no evidence” of an agreement.  It is understandable that Ted would argue that
there was no evidence of a written, signed option agreement.





[5] J. Tracy Christopher,
sitting by assignment before her appointment to this court.