Opinion issued October 14, 2010

 



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00428-CV

———————————

 

Sara A. Morton, Appellant

V.

Patrick Kelley, individually & d/b/a The Law
Offices of Patrick Kelley, Appellee



 



 

On Appeal from the 215th District Court

Harris County, Texas 



Trial Court Case No. 2007-00874

 



 

MEMORANDUM OPINION

 

The trial court rendered summary judgment for appellee,
Patrick Kelley, individually and in his capacity as owner of The Law Offices of
Patrick Kelley, dismissing with prejudice the claims of appellant, Sara A.
Morton, for (1) breach of contract, (2) breach of fiduciary duty, (3) negligent
misrepresentation, (4) fraud, (5) intentional infliction of emotional distress,
and (6) promissory estoppel.  See Tex.
R. Civ. P. 166a.  In six issues,
Morton argues that the trial court erred in rendering summary judgment on each
of her six claims because genuine issues of material fact remained unresolved
as to each.  

We affirm.

BACKGROUND

          Kelley heads a criminal defense
firm.  In late March 2006, he and another
associate of the firm, Julia Jones, interviewed Morton for a position that
Kelley was creating to handle his firm’s growing workload.  Kelley offered Morton a position at the firm
on April 26 of that year, and Morton accepted. 
Over the coming days, Kelley and Morton agreed on a starting salary and
a benefits package that would include the provision of health insurance, but
the two never signed a written contract. 
Morton left her previous job and began to work at Kelley’s firm on May
16, 2006.  

Kelley testified by deposition that he and Jones repeatedly
made clear to Morton that she would be responsible to purchase her own
insurance coverage and that she could either charge the policy to Kelley’s
credit card or purchase it with her own funds and present Kelley with regular
invoices, after which she would be reimbursed. 

Morton testified by deposition that, although Kelley and
Jones had told her that they themselves were covered by individual policies, and
that they may have “initially” advised her to obtain such a policy as well, they
had ultimately asked her to “find a[n insurance] plan the whole group could be
on.”  Morton further testified that she
had presented Kelley with various group plans over the course of her 27 days at
the firm, but that Kelley had expressed a desire to find out more about the
nature of the policies.  Additionally,
Morton testified that neither Kelley nor Jones had ever told her that she would
be required to purchase her own policy. 
During her three weeks at the firm, Morton never obtained a health
insurance policy of any kind.  

On June 18, 2006, Morton sustained a serious injury while
swinging from a rope.  She alleged that
she called Kelley and told him that she would attempt to come back that week,
but that Kelley encouraged her to rest and to heal fully before returning.  When Morton called again later that week,
however, Jones told her that she had been replaced.  As a consequence of her failure to have
obtained health insurance during her employment, Morton personally incurred
significant medical expenses.  

In 2007, Morton filed suit to recover those medical expenses,
alleging that Kelley’s oral promise to provide health insurance had required
him to ensure that Morton was covered at all times during her employment, and
asserting six claims arising from his alleged breach of that obligation.  On April 16, 2009, the trial court rendered
summary judgment for Kelley on each of Morton’s six claims and dismissed the
claims with prejudice. 

STANDARD OF REVIEW

Kelley moved for summary judgment on each of Morton’s
claims on both traditional and no-evidence bases.  See Tex. R. Civ. P. 166a(c), (i).  A no-evidence motion for summary judgment is
in essence a directed verdict granted before trial, to which we apply a
legal-sufficiency standard of review.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003).  A no-evidence summary judgment motion must be granted
if, after an adequate time for discovery, (1) the moving party asserts that
there is no evidence of one or more essential elements of a claim or defense on
which an adverse party would have the burden of proof at trial and (2) the
non-movant fails to produce more than a scintilla of summary judgment evidence
raising a genuine issue of material fact on those elements.  Tex.
R. Civ. P. 166a(i).  A party
moving for no-evidence
summary judgment must specifically state the element or elements of a claim for
which there is no evidence.  Id.; Green
v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126, 130 (Tex. App.—Houston
[1st Dist.] 1999, no pet.).  A
no-evidence summary judgment will be sustained when (1) there is a complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a scintilla,
or (4) the evidence conclusively establishes the opposite of a vital fact.  King Ranch, 118 S.W.3d at 751.  We view the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and
inferences.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997). 


We review a trial court’s grant of
traditional summary judgment de novo.  Provident Life & Accident Ins. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003); Bendigo
v. City of Houston, 178 S.W.3d 112, 113 (Tex. App.—Houston [1st Dist.]
2005, no pet.).  The standard of review
for a traditional summary judgment motion is threefold: (1) the movant must
show that there is no genuine issue of material fact and that he is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed
material fact issue precluding summary judgment, the reviewing court must take
evidence favorable to the non-movant as true; and (3) the reviewing court must
indulge every reasonable inference in favor of the non-movant and resolve any
doubts in the non-movant’s favor.  Fort Worth Osteopathic Hosp. v. Reese,
148 S.W.3d 94, 99 (Tex. 2004) (citing Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985)); see Tex.
R. Civ. P. 166a(c).  

When, as here, a trial court’s order granting summary
judgment does not specify the grounds on which the court relied, we must affirm
summary judgment if any one of the summary judgment grounds is
meritorious.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004); FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872–73 (Tex. 2000).

DISCUSSION

A.      Breach
of contract

In her first issue, Morton argues that the trial court erred
in rendering summary judgment on her breach of contract claim.  Kelley moved for a both traditional and
no-evidence summary judgment on Morton’s breach of contract claim.  Morton asserts that, notwithstanding Kelley’s
motion for summary judgment, issues of material fact exist regarding her breach
of contract claim.  

The elements of a breach of contract claim are (1) the
existence of a valid contract between plaintiff and defendant, (2) the
plaintiff's performance or tender of performance, (3) the defendant's breach of
the contract, and (4) the plaintiff's damage as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics,
Inc., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  In his motion for summary judgment, Kelley
first controverted the existence of a valid contract.  Kelley asserted that, assuming Morton’s
assertions that she had “permanent” employment with Kelley were true, the
contract under which she was employed would be invalid and unenforceable
because it violates the statute of frauds. 
Second, Kelley asserted that even if there was a valid employment
contract, there was no breach of that contract because Kelley did not promise
to provide her with insurance coverage starting the first day of
employment.  Rather, he contends, he
merely promised to provide Morton with reimbursement for insurance she
purchased, and that she chose not to take advantage of that promise when she
chose not to purchase insurance for which he could reimburse her.  Third, Kelley asserted that there was no
breach as a matter of law because even if there was a valid contract, and even
if she had a pre-employment expectation of immediate coverage, she began work,
and continued working, knowing that her alleged assumption of pre-existing
group coverage was not correct.  Finally,
Kelley alternatively asserted that Morton could produce no evidence to her
breach of contract-claim.  If any one of
these grounds was meritorious, we will affirm the trial court’s grant of
Kelley’s motion.  See Joe, 145 S.W.3d at 157.

We conclude that even if there was a valid contract, and even
if Morton had a good-fatih and reasonably held pre-employment understanding
that Kelley promised he would provide her with group health insurance starting
from the first day of her employment, there was no breach because, in this
scenario, there is no dispute that Kelley notified Morton of the change in the
terms of her employment, and she accepted those terms by continuing to
work.  

The Texas Supreme Court has noted that even when a valid
employment agreement exists, an employer may modify the agreement simply by
notifying the employee of the change and the employee’s acceptance of the
change.  See In re Dillard Dep’t Stores, Inc., 198 S.W.3d 778, 780 (Tex.
2006).  If the employee continues working
with knowledge of the changes, even if she continues under protest, then she
has accepted the change as a matter of law. 
See id. 

          At trial and on appeal, Morton
responds to Kelley’s assertion by contending that there are genuine issues of
fact regarding Kelley’s alleged breach. 
Nevertheless, the record shows that Kelley unequivocally notified Morton
of the reimbursement scheme, that Morton acknowledged it, and that Morton then
continued working for Kelley.  Morton
testified during deposition:

Q:               Okay.  Did you
find out – regardless of what you might have thought, did you find out after
you went to work there that there was not a group health insurance plan.

 

[Morton]:    Right. . . .

 

. . . . 

 

Q:               The first thing you learned about the insurance was
there was no group plan when you went to work there?

 

[Morton]:    Right.  They had their separate – their separate
ones.

 

. . . .

 

Q:               Your
understanding was Ms. Jones had her own personal insurance that Mr. Kelley was
paying for?

 

[Morton]:    Right.

 

Q:               Did there ever come a time when Mr. Kelley told you to
do that, arrange for your own insurance and he would pay for it?

 

[Morton]:    If – I can’t remember specifically.  If there was, that was an idea thrown out at
first; and then they wanted the group insurance, to find the insurance for
everybody.

 

Q:               I’m sorry.  Is
your answer, you don’t recall whether you had that conversation with Mr.
Kelley?

 

[Morton]:    I can’t recall one way or the other if that
was brought up at the beginning and then it changed into the group insurance or
—

 

Q:               Okay.  But
that’s what I’m asking you is not what the possibilities are, but do you recall
having a conversation with Mr. Kelley at any time in which he suggested to you
that you get your own health insurance and that he would pay for it?

          

[Morton]:    It
would have been that I get my own, figure out a plan and then he would pay for
it.

 

Q:               Okay. You remember having this discussion?

 

[Morton]:    I can’t recall a specific discussion –
specifically that one way or another. 
But whether it was the individual or a group, what I do remember is that – to find the provider and he would pay for
it. . . .  

 

(emphasis
added). 

          This testimony demonstrates that after
she began working for Kelley, Morton realized that there was no group health
insurance coverage, and that, for her to be covered by insurance, the burden
was on her to “get [her] own, figure out a plan and then [Kelley] would pay for
it.”

          The record further shows the following
testimony:

Q:               All right.  So
you continued to work knowing that you did not have healthcare insurance, right?

 

[Morton]:    Right, because we were in the process of,
you know, dealing with all that —
all the stuff that we just talked about.

 

. . . .

 

Q:               Okay.  During
the time that you were looking for healthcare insurance, did you think you had
any healthcare insurance?

 

          [Morton]:    I knew I didn’t have any healthcare
insurance.

          

Q:               Thank
you.  All right. So —

          

[Morton]:    Otherwise
I wouldn’t have been looking for it.

 

Q:               You and I have said the same thing.  Okay. So did there ever come a time that the
firm purchased healthcare insurance, a group health care insurance policy.

 

[Morton]:    For
themselves?

 

Q:               For
the firm.

 

[Morton]:    Was
there a time ever?  I don’t know.

 

Q:               Okay. How about at any time that you were employed
there?

 

[Morton]:    No.

 

Q:               Okay.  Did you ever quit because of that?

 

[Morton]:    No.

 

Q:               Ever
threaten to quit?

 

A:               No.

 

Morton’s
testimony shows that after beginning her employment, she realized that Kelley
did not provide group health insurance, but, nevertheless, she chose not to
quit her job or to pursue legal remedies for breach of an employment agreement.  By continuing to work for Kelley, as a matter
of law, Morton accepted the terms of her employment regarding the provision of
insurance.  See In re Dillard Dep’t Stores, Inc., 198 S.W.3d at 780 (holding
that employee who refused to sign form acknowledging new arbitration policy,
but continued to work, accepted policy as matter of law).  Because the record shows that Morton accepted
the terms of her employment, that the benefit included in those terms was that
Kelley would only reimburse Morton for an insurance policy that she purchased
herself, and that Morton chose not to take advantage of that benefit when she
chose not to purchase an insurance policy, we conclude Morton has failed to
raise a genuine issue of material fact regarding the breach element of her
breach of contract claim against Kelley. 
We, therefore, hold the trial court did not err in rendering summary
judgment against Morton on her breach of contract claim against Kelley.

          We overrule Morton’s first issue.

B.      Breach
of Fiduciary Duty

          In her second issue, Morton argues
that the trial court erred in rendering summary judgment on her breach of
fiduciary duty claim.  Kelley advanced
two bases for traditional summary judgment on that claim, asserting that (1) as
a matter of law, he owed Morton no fiduciary duty and (2) the evidence
conclusively negated the breach element of Morton’s claim.  Additionally, Kelley moved for no-evidence summary
judgment on the basis that Morton’s could produce no evidence in support of
either of the breach and damage elements of her claim.

The trial court did not state the basis or bases for its
rendition of summary judgment, and Morton challenges only one of these possible
bases for summary judgment—the ground that Kelley owed her no fiduciary
duty.  Generally speaking, an appellant must attack all
independent bases or grounds that fully support a complained-of ruling or
judgment; if an appellant does not do so, then we must affirm the ruling or
judgment.  Britton v. Tex. Dep’t of Criminal Justice, 95 S.W.3d 676, 681 (Tex.
App.—Houston [1st Dist.] 2002, no pet.); see
Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (holding that appellate
court in civil cases normally may not alter erroneous judgment in favor of
appellant who does not challenge that error on appeal).  If an independent ground fully supports the
complained-of ruling or judgment, but the appellant assigns no error to that
independent ground, then (1) we must accept the validity of that unchallenged
independent ground, see Walling, 863
S.W.2d at 58, and thus (2) any error in the grounds challenged on appeal is
harmless because the unchallenged ground fully supports the complained-of
ruling or judgment.  Britton, 95 S.W.3d at 681. 
We have applied this rule in the context of summary judgment rulings.  See Ellis v. Precision Engine Rebuilders, Inc., 68 S.W.3d 894, 898 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). 
Because Morton failed to challenge Kelley’s traditional summary judgment
argument that the evidence conclusively negated the breach element of Morton’s
claim as a matter of law, and Kelley’s no-evidence summary judgment argument
that Morton’s could produce no evidence in support of either of the breach and
damage elements of her claim, we must accept the validity of these remaining
grounds and affirm summary judgment against Morton’s breach of fiduciary duty
claim.  See Britton, 95 S.W.3d at 681.

We overrule Morton’s second issue.

C.      Negligent  Misrepresentation

In her third issue, Morton argues that the trial court erred
in rendering summary judgment on her negligent misrepresentation claim.  Kelley moved for traditional summary judgment
on this claim on two bases: (1) that it pertained to a promise of future
conduct, which by operation of law could not form the basis of an action for
negligent misrepresentation, and (2) that the claim was barred by the
economic-loss doctrine.  In support of
his motion for no-evidence summary judgment on this claim, Kelley additionally
argued that Morton could not produce evidence supporting any of the essential
elements of negligent misrepresentation. 


In response to Kelley’s first stated basis for traditional
summary judgment, Morton argued, and maintains on appeal, that her claim was
based not on “a promise of future performance but on “a misrepresentation of
existing fact: that [Morton’s] current job offer—which was accepted—included
health benefits.”  On appeal, however,
Morton challenges only those bases that Kelley advanced in support of his
motion for traditional summary judgment; she does not challenge any of his
stated bases for no-evidence summary judgment, i.e., she does not challenge
Kelley contention that Morton could produce no evidence supporting any of the
essential elements of her negligent misrepresentation claim.  See Swank v. Sverdlin, 121 S.W.3d 785, 802 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied) (“To prevail on a negligent misrepresentation claim, the
plaintiff must demonstrate: (1) the representation was made by a defendant in
the course of his business, or in a transaction in which he had a pecuniary
interest; (2) the defendant supplied false information for the guidance of
others in their business; (3) the defendant did not exercise reasonable care or
competence in obtaining or communicating the information; and (4) the plaintiff
suffered pecuniary loss by justifiably relying on the representation.”) (citing
Fed. Land Bank Ass’n v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991)). 
Consequently, we must accept the unchallenged bases as true.  See Britton,
95 S.W.3d at 681.

We overrule Morton’s third issue.

D.      Fraud


In her fourth issue, Morton argues that the trial court erred
in rendering summary judgment on her fraud claim.  Kelley’s motion for traditional summary
judgment on that claim was based on his twin assertions (1) that a claim of
fraud pertaining to a promise of future performance requires a showing that the
promisor, at the time that the promise was made, had no intention of performing
and (2) that the evidence conclusively disproved Morton’s allegation that
Kelley had had such mal-intent at the time of their agreement.  Kelley further moved for no-evidence summary
judgment on the basis that Morton could produce no evidence in support of any
of the elements required to sustain a fraud action.  See Formosa
Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc., 960 S.W.2d
41, 47–48 (Tex. 1998) (“A fraud cause of action requires ‘a material
misrepresentation, which was false, and which was either known to be false when
made or was asserted without knowledge of its truth, which was intended to be
acted upon, which was relied upon, and which caused injury.’”) (quoting Sears, Roebuck & Co. v. Meadows, 877
S.W.2d 281, 282 (Tex. 1994)).

In response, Morton argued that “[Kelley was] not entitled to
summary judgment . . . just because [Morton] did not know what was going on in
his mind at the time he misrepresented her compensation and benefits” and that
“[for] purposes of summary judgment, [Morton] is entitled to the reasonable inference, based on the fact
that [Kelley] did not perform his promise . . . [that] he did not intend to
perform it at the time the misrepresentation was made.”

An action for fraud pertaining to a promise of future
performance requires, as relevant here, a showing that the promisor, at the
time that the promise was made, had no intention of performing the act.  Formosa, 960 S.W.2d at 48.   The mere failure to perform under a contract
is not sufficient evidence of fraud.  Id. 
Rather, a plaintiff alleging a fraud claim must demonstrate that the
defendant, at the time that he or she made the representation, had intent to
deceive and had no intent to perform; the evidence presented must be relevant
to the promissor’s intent at the time that the representation was made.  Id.  However, “[w]hile a party’s intent is
determined at the time the party made the representation, it may be inferred
from the party’s subsequent acts after the representation is made . . . ‘Slight
circumstantial evidence’ of fraud, when considered with the breach of promise
to perform, is sufficient to support a finding of fraudulent intent.”  Spoljaric
v. Percival Tours, Inc., 708 S.W.2d 432, 434–35 (Tex. 1986).

          In support of his motion for
no-evidence summary judgment, Kelley argued that Morton could produce no
evidence in support of the intent element of her fraud claim.  In response, Morton argued below, and
maintains on appeal, (1) that “[t]he issue of intent inherently involves fact
issues”; (2) that “[s]ince [she] has no way of knowing what was going on in
[Kelley’s] mind, the only way to prove his intent is through circumstantial
evidence”; and (3) that “[a]lthough non-performance of a promise does not, in
and of itself, prove that the Defendant did not intend to perform a future act,
non-performance is evidence of intent.” 
Morton cites the following exchange in her deposition testimony “as
highlight[ing] the reason why summary judgment is inappropriate on issues of
the movant’s intent”:

Q:               Do
you have any information that when Mr. Kelley supposedly promised [to provide
insurance] that he had no intention of doing it?

 

[Morton]:    What kind of information?

 

Q:               Any
person who has told you that, any documents that would show you that, any
witness that are going to testify to that?

 

[Morton]:    I don’t know.

 

Q:               Okay.  Put it another way.  If Mr. Kelley testifies I did intend to
provide Ms. Morton insurance when I told her that I would get insurance—I’m
sorry, when I told her I would pay for her insurance, do you have any information
that that’s not true?

 

[Morton]:    I don’t have anyone that would say that.

 

Q:               Or a document that would show that?

 

[Morton]:    Not
like a note that he says I don’t intend to do this.  But it wasn’t there when I got there, so I
don’t know what he was thinking.

 

Q:               That’s
what I’m asking.  What you’ve told me so
far is that you understood you would have healthcare insurance at about the
time or shortly after you started working for the law firm, right?

 

[Morton]:             Not
shortly after, at the time I started. 
That’s what I assumed because most jobs do that.

 

Q:               Okay.  You assumed that.  I understand. 
When you got there, you found out there isn’t insurance available for
you at the moment, right?

 

[Morton]:             Right.

 

Q:               Okay.  My question is when Mr. Kelley said whatever
made you assume that, I understand it turned out not to be the way you
assumed.  Am I correct about that?

 

[Morton]:    Oh, it
turned out to not be the way I assumed.

 

Q:               Okay.  But my question is:  Do you have any information that Mr. Kelley
ever said anything to you about insurance with the intent at the time of not
doing what he told you?

 

[Morton]:    I don’t have any documents that say that.

 

Q:               How about any witnesses that can
testify to that?

 

[Morton]:    I
don’t know—I don’t know because I don’t know what he was thinking at the
time.  I mean, he might if he told some
of his friends he planned to not do it. 
I don’t know.

 

Outside of this exchange, Morton pointed out no evidence
pertinent to Kelley’s intent at the time of his alleged promise.  As we have noted, the mere failure to perform
under a contract is not sufficient evidence of fraud.  Formosa,
960 S.W.2d at 48.  Other than her
testimony that the insurance coverage “wasn’t there when I got there, so I
don’t know what he was thinking” and that her healthcare coverage “turned out
to not be the way [she had] assumed,” Morton pointed out no evidence in
response to Kelley’s no-evidence motion. 
The second component of Morton’s argument motion—that “[s]ince [she]
ha[d] no way of knowing what was going on in [Kelley’s] mind, the only way to
prove his intent is through circumstantial evidence”—is accurate as a statement
of law.  See Spoljaric, 708 S.W.2d at 435. 
But in her response below and her brief on appeal, Morton has cited no
such circumstantial evidence.  Similarly,
her contention that “[a]lthough non-performance of a promise does not, in and
of itself, prove that the Defendant did not intend to perform a future act,
non-performance is evidence of intent” may be true in some circumstances—when,
for example, non-performance is coupled with other circumstances reflecting on
the promissor’s intent.  Here, however,
Morton failed to produce any evidence of such circumstances.  Because she failed to produce more than a scintilla
of evidence supporting the intent element of her fraud claim, the trial court
did not err in rendering summary judgment on that claim.

          We overrule Morton’s fourth issue.

E.      Intentional
Infliction of Emotional Distress

In her fifth issue, Morton argues that the trial court erred
in rendering summary judgment on her claim for intentional infliction of
emotional distress.  The behavior that
she alleged to have been outrageous included Kelley’s failure to have provided
health insurance; his discharge of Morton following her injury; his failure to
have paid her salary during her recovery time; his failure to have informed her
that she had been replaced; his threat, in response to Morton’s “[attempt] to
resolve” the dispute about health insurance, to sue her if she sought relief
through litigation; and an incident in which Kelley, after initially having
refused to speak to Morton or to meet her personally, had allegedly berated her
and told her to leave his office.  In his
motion for traditional summary judgment on this claim, Kelley asserted (1) that
the evidence demonstrated that he had not engaged in the alleged behavior; (2)
that, as a matter of law, the alleged conduct had not risen to the level
necessary to sustain Morton’s action for intentional infliction of emotional
distress; (3) that the evidence conclusively demonstrated that Morton had not
suffered severe emotional distress; and (4) that Morton’s claim was barred by
the economic-loss doctrine.  In support
of his motion for no-evidence summary judgment, Kelley further argued that
Morton had failed to produce any evidence substantiating the intent and harm
elements of her claim.

On appeal, Morton does not address Kelley’s basis for
no-evidence summary judgment as to the intent element of her claim.  Consequently, we must accept it as true and
affirm the rendition of summary judgment as to Morton’s claim of intentional
infliction of emotional distress.  See Britton, 95 S.W.3d at 681.

We overrule Morton’s fifth issue.

F.      Promissory
Estoppel     

In her sixth issue, Morton argues that the trial court erred
in rendering summary judgment against her on her promissory-estoppel claim.  The elements of a promissory estoppel claim
are a promise, the promisor foreseeing that the promisee will rely on it, and
detrimental reliance by the promisee.  See English v. Fischer, 660 S.W.2d 521,
524 (Tex. 1983); Sandel v. ATP Oil &
Gas Corp., 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  To show detrimental reliance, the
plaintiff must show that she materially changed her position in reliance on the
promise.  Sandel, 243 S.W.3d at 753.  

Kelley moved for a no-evidence summary judgment on the basis
that Morton had produced no evidence that she had relied on “any” promise by
Kelley to her detriment.  In her response
to Kelley’s no-evidence motion, Morton asserted “there is ample evidence in the
record that Ms. Morton reasonably and justifiably relied on [the promise to
provide group health insurance] to her detriment.”  Contrary to Morton’s assertion, we have shown
that even if Morton’s pre-employment understanding was that Kelley would supply
her with group health insurance beginning the first day of her employment, this
misconception was corrected by Kelley once Morton began working.  Furthermore, Morton accepted any new terms of
employment as a matter of law when she continued working for Kelley after
learning that Kelley would not supply group health insurance.  See In
re Dillard Dep’t Stores, Inc., 198 S.W.3d at 780.  Because Morton understood that Kelley was not
providing group health insurance, we conclude she could not have relied on any
promise from Kelley regarding his provision of group health insurance.  Additionally, the record shows that Morton
did not give up health insurance in order to work for Kelley or otherwise
detrimentally rely on Kelley’s promise to continue to employ her or find a new
position for her after she healed because Morton testified that she did not
forgo any other employment opportunities in reliance of Kelley’s promise of
employment.  We hold that Morton failed
to raise an issue of material fact that controverts Kelley’s no-evidence motion
for summary judgment, and, therefore, the trial court did not err in rendering
summary against Morton on her promissory estoppel claim.

We overrule Morton’s sixth issue.




 

Conclusion

          We affirm the judgment of the trial
court.

 

 

Sherry
Radack

                                                                   Chief
Justice 

 

Panel consists
of Chief Justice Radack, and Justices Massengale and Nuchia.[1]

 

 

 











[1]           The
Honorable Sam Nuchia, Senior Justice, Court of Appeals for the First District
of Texas, participating by assignment.