# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00716-CV

**Scott Ogle, Appellant**

**v.**

**Maeli Hector, a/k/a Maeli Arellano, a/k/a Maeli Johnson, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-14-011792, HONORABLE TODD T. WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After their relationship ended, appellant Scott Ogle sued appellee Maeli Hector, a/k/a Maeli Arellano, a/k/a Maeli Johnson, asserting claims for breach of contract and promissory estoppel based on his allegations that he and Hector had "executed a valid and enforceable written contract, via texts, that was performable during one year," under which Hector agreed to take a lie detector test in exchange for Ogle dismissing a defamation suit he had filed against her and paying her $2,500 for her attorney's fees, and that Hector had breached her agreement by refusing to take the lie detector test. "This agreement," Ogle asserted, "was a written agreement between the parties through a[] series of text messages." The trial court granted summary judgment for Hector and awarded her $10,150 in attorney's fees. Ogle argues that the trial court erred in awarding attorney's fees and in granting summary judgment on his claim for promissory estoppel. We affirm the trial court's orders granting summary judgment and awarding Hector attorney's fees.

# Factual Summary[1]

Ogle and Hector had a relationship some number of years ago. After their relationship ended, Ogle filed suit against Hector, "the subject of which involved the truthfulness of allegations of criminal activity involving" Hector's former church. On the morning of November 21, 2014,[2] Ogle texted Hector to say, "I'm nonsuiting your case when I get back in town today. . . . I'll send you a check." About three hours later, Ogle sent the following messages:

> Would you mind calling and retracting your comments about me to Hauck, and any others you mentioned my "court orders"?
>
> Before you collect the $ I "owe" you?

---

[1] Our summary of the facts comes from the filings and the summary judgment evidence. The record does not contain a full explanation of the relationship and dispute between Ogle and Hector, but it appears that during the relationship, Hector shared with Ogle unpleasant allegations about a church she had attended; that Ogle began making public statements against the church and some of its members, including contacting the FBI to report sexual assault and human trafficking by the church; that at some point, possibly as a result of those allegations, Ogle's mental state was assessed by a medical professional, who recommended that he seek psychological treatment; that the FBI questioned Hector about Ogle's allegations and that she denied the allegations and said Ogle was "court-ordered crazy"; that Ogle sued her for defamation as a result; and that Ogle had hoped that he and Hector would rekindle their relationship after he dropped his original lawsuit. We recite these apparent historical facts only to provide context for some of the statements by the parties.

[2] In a December 2014 hearing in the earlier defamation suit, the transcript of which was attached as evidence to Hector's first motion for summary judgment, Ogle told the trial court that he "threw away our first string of e-mails" and that the text messages "that I threw away . . . confirm that we had an agreement." In that hearing, Ogle claimed Hector was "very good at keeping everything" and sought a court order requiring her to produce her cell phone or the texts and emails between the two of them, later filing a motion for sanctions due to Hector's alleged spoliation of evidence based on her discarding her old phone when she replaced it with a new one. In hearings in this suit, Ogle again explained that he threw away many of the text messages between him and Hector and that he had spent considerable sums trying to recover them. The texts and emails set out above are the only communications included in the record. "Screen shots" of the text messages in question were provided by Ogle in his response to Hector's requests for production and attached to Hector's motion for summary judgment.

and take a lie detector test . . . for my peace of mind.

Or, let everyone assume it was "all in my head"?

Leaving me "under the bus""?

If not, go find a lawyer.

It takes a lifetime to build a reputation, and one "court ordered crazy" comment to lose it all.

Three hours later, after Hector apparently did not reply, Ogle sent another message saying, "I would appreciate you taking a lie detector just so I can show the fbi, but I won't hold back on my promise to fold and pay you.  Tell me where to meet, and I'll bring your check."  Ogle wrote Hector a check for $2,500 on November 21, and she deposited it that same day.

In early December 2014, Ogle and Hector exchanged emails, saying in relevant part:

Ogle  You forgot everything else, and you never accepted . . . anything, other than the original text agreement which included you taking a simple lie detector test that I pay for and you keep the money!

Hector:  I'll have your money next week.  All $2,500.[3]

Ogle:  I want you to take the test for my credibility.  That's what you agreed to in our settlement.  Otherwise, tell it to the judge, weasel.

Hector: I'll drop the check off for you on Monday morning.  I never agreed to anything.  Get over it[.] Peace!

You said forget the lie detector test after we agreed.

Ogle:  I dropped my lawsuit, mainly, because you agreed to take the lie detector test. I felt that was the easiest way to prove the truth between the two of us. . . Now you claim you changed your mind, or didn't agree to a lie detector test?, or that you did agree, confirming through texts several times, giving me your "word", but didn't mean it?

---

[3]  Although it is unclear, it does not appear that Hector actually returned the $2,500 to Ogle.

Were you lying at the time of the agreement about your intentions of even taking the test?

Hector: Lol, then your dumbass got yourself out of it by saying I didn't have to do it, to forget it!!  The 25th of November!!!

. . .

I won't be taking the lie detector test, because . . . I don't have to.

I will never take a stupid lie detector test lol

Ogle: Why would you live with an old man for a year and a half, tell him you loved him every other day, take his money, tell him about molestations of a local Mexican church, dump him, call him crazy to a Federal law enforcement investigator which leads the Feds to notify local law enforcement about your competency issues with him, trick him into dropping a lawsuit involving the truth about the church's criminal activity, get him to reimburse your attorney fees, all in exchange for you simply agreeing to take a lie detector test, then you argue that text agreements aren't "a contract" because there's no paper, and wonder why I am frustrated?

Shortly after that email exchange, Ogle sued for breach of contract and promissory estoppel.[4]  The trial court granted Hector's motions for summary judgment on both claims.  Ogle complains only of the dismissal of his claim for promissory estoppel and the award of attorney's fees.

**Promissory Estoppel**

In his second issue, Ogle argues that the trial court erred in granting Hector's motion for summary judgment on his claim for promissory estoppel.  We disagree.

---

[4] Hector asserts that Ogle initially only sued for breach of contract and added his claim for promissory estoppel after the trial court dismissed the breach-of-contract claim.  The trial court's order granting summary judgment on the breach-of-contract claim states the same—that Ogle amended his petition in May 2015 to add a claim for promissory estoppel.  However, the clerk's record reflects that Ogle asserted both causes of action from the inception of the lawsuit.

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 266 (Tex. App.—Austin 2000, no pet.). A plaintiff asserting promissory estoppel must show "'an actual promise'" that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.)). Furthermore, "[t]o show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise." *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The texts presented by the parties show that Ogle told Hector he was nonsuiting his defamation case and writing her a check for attorney's fees and that he asked her to take a lie detector test; they do not include an indication that Hector actually agreed to the test, only Ogle's repeated requests that she do so. In his affidavit in opposition to Hector's motion he stated that Hector "agreed to take a lie detector test in exchange for the dismissal of a lawsuit against her and the payment of twenty-five hundred dollars," that he "relied upon [Hector's] agreement in that I dismissed a lawsuit that would not be barred by the statute of limitations," and that he "would not have dismissed my lawsuit but for her promise to take a lie detector test."[5] However, the evidence establishes that, at 1:43 p.m. on November 21, the day he filed his nonsuit, Ogle sent her a text

---

[5] Hector did not object to Ogle's affidavit. *See* Tex. R. Civ. P. 166a(c).

5

saying that although he would "appreciate" her taking the test, "I won't hold back on my promise to fold and pay you." In a hearing before the trial court in December 2014, the transcript of which was attached to Hector's first motion for summary judgment, Ogle admitted as much, saying:

> [T]o be clear, I did tell her in a text you don't have to take the lie-detector test. That was after the settlement agreement that was done with the understanding that she was being honest with her other claims [apparently related to rekindling her relationship with Ogle]. The second my check cleared, according to her text, she blocked me. She entered our agreement with ill will. She didn't plan on taking the lie-detector test. She didn't plan on having any kind of relationship with me. She planned on having me drop the lawsuit, promised me the world. Once the 2500.00 check cleared, everything was off.

Assuming without deciding that Ogle's affidavit raised fact questions as to whether Hector agreed to take a lie detector test and whether that agreement was "sufficiently specific and definite" to be relied upon, *see Davis*, 470 S.W.3d at 108, Ogle explicitly stated that his dropping the suit and paying her attorney's fees was not contingent on her taking the test. Thus, Ogle relieved Hector from any agreement she might have made and cannot show that he materially changed his position in reliance on Hector's alleged promise to take the test. *See Sandel*, 243 S.W.3d at 753. The trial court did not err in granting summary judgment on Ogle's claim for promissory estoppel.

**Attorney's Fees**

In his first issue, Ogle complains that the trial court erred in awarding attorney's fees to Hector. He argues that because Hector did not assert a claim for attorney's fees in her answer, the attorney's fee award was not supported by the pleadings. He further asserts that the award is not supported by sufficient evidence to withstand scrutiny as a sanctions award under either chapter 10

of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code §§ 10.001-.006 ("Sanctions for Frivolous Pleadings and Motions"), or under rule 13 of the rules of civil procedure, *see* Tex. R. Civ. P. 13. Finally, he contends that the court could not have awarded attorney's fees as sanctions under its own inherent power. In his second issue, Ogle argues that the amount awarded was unreasonable. We affirm the trial court's award of attorney's fees.

Ogle is correct that Hector did not include a claim for attorney's fees in her answer.[6] However, attorney's fees were requested in Hector's motion for summary judgment[7] and were sought as sanctions due to Ogle's behavior during the lawsuit (and Hector's assertion that the breach-of-contract claim was groundless)—they were not requested under a contractual provision or a statute that allows for the recovery of attorney's fees based on the kind of claims brought.[8] Further, Ogle never objected to Hector's failure to include her request in her answer. *See Emery Air Freight Corp. v. General Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.]

---

[6] "Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.). "A general prayer for relief will not support an award of attorney's fees because it is a request for affirmative relief that must be supported by the pleadings." *Id.*; *see also State v. Estate of Brown*, 802 S.W.2d 898, 900 (Tex. App.—San Antonio 1991, no writ) ("Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity.").

[7] Hector only sought sanctions in her motion for summary judgment on Ogle's claim for breach of contract. In her motion for summary judgment on the claim for promissory estoppel, Hector said she was not requesting attorney's fees "at this time."

[8] As a general rule, a trial court may not award attorney's fees unless specifically authorized to do so by contract or statute. *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009).

1996, no writ), *disapproved of on other grounds by Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008) (appellees did not plead for attorney's fees in answer but did include request in motion for summary judgment; appellant did not object to trial court's consideration of issue and thus waived any error (quoting *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)). Ogle thus waived any complaint related to Hector's making her request for attorney's fees in her motion for summary judgment rather than in her answer.

In her motion for summary judgment on Ogle's claim for breach of contract, Hector requested attorney's fees "incurred in the defense of this frivolous suit in the amount of $10,150," asserting that Ogle had filed the suit for purposes of harassment and citing to chapter 10 and rule 13. *See* Tex. Civ. Prac. & Rem. Code §§ 10.002(c), .004(c)(3); Tex. R. Civ. P. 13.

Under chapter 10, a person's signing of a pleading or motion "constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry," the document is being presented for a proper purpose; each claim or other contention is warranted by law or a "nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law"; each allegation has or is likely to have evidentiary support; and each denial of a factual contention is warranted by the evidence or a lack of information or belief. Tex. Civ. Prac. & Rem. Code § 10.001. Sanctions may be assessed if a person signs or files a document in violation of section 10.001 and may include "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." *Id.* § 10.004(a), (c)(3). The court may not award monetary sanctions on its own initiative without first issuing a show-cause

8

order, *id.* § 10.004(e), and an order awarding sanctions under chapter 10 must describe "the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed," *id.* § 10.005. Similarly, rule 13 provides that an attorney's signature constitutes his certificate that the document, to the best of his knowledge, information, and belief formed after reasonable inquiry, is not groundless and brought in bad faith or for the purpose of harassment. Tex. R. Civ. P. 13. If an attorney violates rule 13, the court, on a party's motion or its own initiative, after notice and hearing, "shall impose an appropriate sanction." *Id.* Sanctions may not be imposed under rule 13 "except for good cause, the particulars of which must be stated in the sanction order." *Id.*

In her motion for summary judgment on Ogle's claim for breach of contract, Hector requested "attorney's fees incurred in the defense of this frivolous suit in the amount of $10,150," asserting that Ogle had filed the subject suit for purposes of harassment. *See* Tex. Civ. Prac. & Rem. Code §§ 10.002(c), .004(c)(3); Tex. R. Civ. P. 13. In its order granting summary judgment on the breach-of-contract claim, the trial court specifically stated that Hector's sanctions request "remains under advisement by this Court." At the hearing on Hector's motion for summary judgment on the claim for promissory estoppel, Hector's attorney, Paul Batrice, argued that Ogle's claim was "clearly frivolous, baseless" and noted that the trial court had taken Hector's request for attorney's fees under advisement. Batrice provided the trial court with a copy of his affidavit for attorney's fees, which had been attached to Hector's earlier motion for summary judgment, and stated that "[t]he attorney's fee in that matter total $10,150." Ogle countered with a recitation of his version of the facts leading up to his filing of the defamation lawsuit and Hector's alleged promise to take a lie detector test, arguing that his affidavit and allegations raised fact issues precluding summary judgment on the claim for promissory estoppel. Ogle did not make any complaints related to Batrice's affidavit,

9

nor did he argue that the requested sum was unreasonable or unsupported by the evidence. At the conclusion of the hearing, the trial court stated that it was going to grant summary judgment in Hector's favor and award attorney's fees. Ogle did not complain at that point that a sanctions award was improper, that the court had not found the required facts under chapter 10 or rule 13, or that the amount of the award was unreasonable.

The trial court signed an order granting summary judgment on Ogle's claim for promissory estoppel and ordering Ogle to pay $10,150 "as attorney fees for the benefit of" Hector. The order did not refer to Hector's request for sanctions, did not specify the conduct on which sanctions were based, and did not state that the attorney's fees were in fact awarded as sanctions. *See* Tex. Civ. Prac. & Rem. Code § 10.005; Tex. R. Civ. P. 13. These deficiencies would ordinarily be an abuse of discretion. *See Tanner v. Black*, 464 S.W.3d 23, 28 (Tex. App.—Houston [1st Dist.] 2015, no pet.). However, Ogle did not complain about the sanctions award in the trial court, whether by way of a motion for new trial, a motion to modify the award, a request for findings of fact and conclusions of law, or any other motion noting the order's deficiencies.[9] Ogle therefore waived any objection to the lack of specific findings in the order, and we will review the record to determine whether there was evidence to support implied findings that Ogle's claim was groundless and brought in bad faith or for purposes of harassment. *See id.*; *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex.

---

[9] Nor do the reporter's records provided to us include any objection by Ogle to Hector's request for attorney's fees under chapter 10 or rule 13, unless we view his repeated assertions that she had promised to take a lie detector test as including an implied objection that his suit was not groundless. The record before us does not include a reporter's record from the hearing on Hector's motion for summary judgment on the breach-of-contract claim.

App.—Austin 2008, pet. denied). We review a trial court's sanction order for an abuse of discretion. *Scheel v. Alfaro*, 406 S.W.3d 216, 225-56 (Tex. App.—San Antonio 2013, pet. denied).

As discussed above, despite Ogle's assertions that Hector promised to take a lie detector test in exchange for his nonsuit, the evidence establishes and Ogle admitted before the trial court that he told her she did not have to take such a test. The trial court thus could reasonably have determined that Ogle's claim for breach of contract was groundless. Further, in her motion for summary judgment on the breach-of-contract claim, Hector asserted that throughout the proceeding, Ogle had made "continuing efforts to harass, bully and intimidate Ms. Hector, members of her family, nonparty members of a church who have no connection with this suit, and the undersigned attorney and his staff." Hector alleged that Ogle had attempted to contact her directly despite her being represented by counsel; sent numerous emails to Batrice, frequently using vulgar, abusive, and harassing language; repeatedly attempted to subpoena Hector's family members and church members who had no connection to the suit; and posted a number of items related to the lawsuit onto the internet. As evidence, Hector attached copies of various emails from Ogle to Batrice that contain abusive or profane language.[10] Based on this record, the trial court could reasonably have concluded

---

[10] The evidence included emails in which Ogle asked Batrice if Hector would "meet me for drinks, like she promised, tonight," adding, "Your fat ass is not invited"; a photo sent to Batrice that says, "There's 3 things you should know about me . . . 3. Never fuck me over"; emails in which Ogle called Batrice an "idiot," "a dick," and "a paid dishonest weasel/snake" and said he would "end up in Hell"; an email in which Ogle told another attorney in Batrice's office that his "pleading is full of shit," that the attorney "thrive[s] off of lying," and that the attorney's "affidavit may affect your health"; and an email to Batrice from a non-party who said she felt threatened by an email from Ogle to her that said, "You're next." We further note that in hearings in the trial court, Ogle called Batrice a "fool," resulting in the trial court reprimanding Ogle not to call anyone derogatory names, and referred to another attorney as having "a license to lie," resulting in the court asking him to "keep your comments to yourself."

that Ogle filed his suit alleging breach of contract in bad faith or for purposes of harassment. Ogle has not shown that the trial court abused its discretion in determining that sanctions were warranted under chapter 10 and rule 13. We overrule Ogle's first issue on appeal.

In his second issue, Ogle argues that the amount of attorney's fees awarded by the trial court was unreasonable. We disagree.

The reasonableness of an award of attorney's fees is generally a fact question. *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010); *Ten-Booms v. Obregon*, No. 03-09-00713-CV, 2011 WL 2162884, at *11 (Tex. App.—Austin June 3, 2011, no pet.) (mem. op.); *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.*, 754 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.] 1988, writ denied). "To support an award of reasonable attorney's fees, there should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates," but "'evidence on each of these factors is not necessary to determine the amount of an attorney's fee award,'" and a trial court may consider the entire record and its common knowledge. *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.) (quoting *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.), and citing *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). An attorney's uncontroverted affidavit may constitute expert testimony sufficient to support an attorney's fee award in a summary judgment proceeding. *Ten-Booms*, 2011 WL 2162884, at *13; *Tesoro Petroleum Corp.*, 754 S.W.2d at 767. "To create a fact issue, the non-movant's attorney must file an affidavit contesting the reasonableness of the movant's attorney's fee affidavit." *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex.

App.—Houston [1st Dist.] 1991, writ denied); *see Ten-Booms*, 2011 WL 2162884, at \*13 ("An opposing attorney's criticism of the amount of attorney's fees sought does not raise a fact issue regarding the reasonableness of the attorney's fees.").

In *Eberstein v. Hunter*, to which Ogle cites, Hunter presented her attorney's affidavit, which detailed his training and experience, stated that he was hired in the subject proceeding, and opined that a reasonable fee would be $50,000. 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.). Our sister court held that the affidavit did not provide any factual basis for the attorney's opinion and thus was not competent evidence to support summary judgment on Hunter's claim for attorney's fees. *Id.* Batrice's affidavit, however, stated that he had ten years of experience, that $350 an hour was a customary rate for an attorney of that experience, that he had spent twenty-nine hours on the case so far, and that his "opinion is that $10,150 is [a] reasonable and customary attorney fee."

Unlike the affidavit in *Eberstein*, Batrice's affidavit, although spare, provides a factual basis for the fee sought. *See id.*; *see also Kimes v. Commission for Lawyer Discipline*, No. 03-96-00681-CV, 1998 WL 54126, at \*3 (Tex. App.—Austin Feb. 12, 1998, pet. denied) (not designated for publication) (affidavit was sufficient where attorney stated that $125 was reasonable hourly rate in geographical area, stated that she had thus far spent seventy-five hours on matter and expected to spend additional time in future, itemized tasks involved, and concluded that $10,000 was reasonable fee). Ogle did not contest those assertions, much less present any controverting affidavit. *See Ten-Booms*, 2011 WL 2162884, at \*13; *Owen Elec. Supply*, 821 S.W.2d at 288. Although Batrice did not itemize the tasks he performed in his twenty-nine hours of work, the trial court could consider the entire record in the case, which includes numerous motions and hearings

filed in slightly more than six months' time, including competing motions to compel discovery, motions for sanctions, and several motions filed by Hector—most or all of which were granted by the trial court—seeking to quash depositions of people she asserted had no knowledge of facts relevant to Ogle's suit. *See In re M.A.N.M.*, 231 S.W.3d at 567. The trial court did not abuse its discretion in awarding the $10,150 sought by Hector. We overrule Ogle's first issue on appeal.

## Conclusion

We have overruled Ogle's issues on appeal. We affirm the trial court's orders granting summary judgment in favor of Hector and awarding her $10,150 in attorney's fees.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed: August 2, 2017

14